IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MEDSCRIPT PHARMACY, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | No. 14 C 0469 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| MY SCRIPT, LLC; KHADER DAVID | ) | |
| PHARMACY SERVICES, LLC; ZIAD KHADER; | ) | |
| NEIL PATEL; NIKHIL PATEL; and DANIEL | ) | |
| LEBEN, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| MY SCRIPT, LLC; KHADER DAVID | ) | |
| PHARMACY SERVICES, LLC; ZIAD KHADER; | ) | |
| NEIL PATEL; NIKHIL PATEL; and DANIEL | ) | |
| LEBEN, | ) | |
| | ) | |
| Counter-Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MEDSCRIPT PHARMACY, LLC, | ) | |
| | ) | |
| Counter-Defendant. | ) | |

**AMENDED MEMORANDUM OPINION AND ORDER**

Plaintiff Medscript Pharmacy, LLC (Medscript) has brought a nine-count amended complaint against defendants My Script, LLC (My Script), Khader David Pharmacy Services, LLC d/b/a Valuscript (Valuscript), and Patel Khader, LLC (Khader LLC), Ziad Khader, Neil Patel, Nikhil Patel, and Daniel Leben (collectively Non-Pharmacy Defendants). Count I alleges false advertising pursuant to the Lanham Act (15 U.S.C. § 1125). Count II alleges a violation of the Illinois Uniform Deceptive Trade Practices Act (IUDTPA) (815 ILCS § 510, et seq.). Count III alleges tortious interference with prospective economic advantage. Count IV alleges a

violation of Florida Deceptive and Unfair Trade Practices Act (FDUTPA) (Fla. Stat. § 501.201, et seq.). Count V (mislabeled "Count IV") alleges common law unfair competition. Count VI alleges unjust enrichment. Count VII alleges conversion. Count VIII alleges civil conspiracy. Count IX alleges a violation of the Illinois Pharmacy Practice Act (225 ILCS 85, et seq.).

Defendants have moved to dismiss all counts pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. All defendants assert that the amended complaint: (1) violates Fed. R. Civ. P. 9(b) because the counts based on averments of fraud (I, II, III, IV, VIII) are not pled with specificity; (2) violates Fed. R. Civ. P 8(a) by failing to give notice to defendants of the claims and relief sought against them; (3) cannot allege the factual elements necessary to prevail on the claims asserted in each count; (4) disguises Health Insurance Portability and Accountability Act (HIPAA) claims and that counts based on those claims fail because HIPAA provides no private right of action and Medscript does not have standing to assert claims based on the rights of third parties[1]; and (5) cannot assert claims based on use of the patient list at issue because it was given to Non-Pharmacy Defendants without restriction. Additionally, My Script moves to dismiss Count IV (FDUTPA) because it asserts that it is in compliance with Florida law and Count IX because Medscript has no standing to bring the claim. For the reasons discussed below the defendants' motions to dismiss are granted in part and denied in part.

## FACTS[2]

---

[1] The court concludes that Medscript's claims do not rely on its HIPAA allegation, and therefore does not reach these issues.

[2] The following facts are taken from plaintiff's complaint and are assumed to be true for
(continued...)

Plaintiff Medscript is a Professional Compounding Centers of America (PCCA) certified compounding pharmacy with its principal place of business in Illinois. Defendant My Script is a compounding pharmacy with its principal place of business in Michigan. Defendant Valuscript is also a compounding pharmacy with its principal place of business in Indiana. Non-Pharmacy Defendants (Khader LLC, Neil Patel, Nikhil Patel, Khader, and Leben) are former owners and members of Medscript. Khader is a member of Khader LLC. Leben, Khader, and Neil Patel are members of My Script. Khader is also a member of Valuscript.

On December 31, 2013, Non-Pharmacy Defendants sold their interests in Medscript to Maryam Alrazzaq. Pursuant to the sale, Medscript provided Non-Pharmacy Defendants with a patient list, containing patients' protected health information, to allow Non-Pharmacy Defendants to verify the amount of payments they would receive from Medscript post-closing.[3] By January 21, 2014, Non-Pharmacy Defendants had given the patient list to My Script and Valuscript to market My Script and Valuscript and to induce prescribers to fill prescriptions with My Script and Valuscript rather than Medscript. Medscript alleges that the use of the patient list for marketing purposes violates HIPAA.

Upon receiving the patient list, employees or agents of My Script began calling Medscript's patients and telling them one of two false statements: (1) Medscript was out of

---

[2](...continued)
the purposes of this motion to dismiss. See Murphy v. Walker, 51 F.3d 714, 717 (7th Cir. 1996).

[3] Medscript argues that the sales contract in which this agreement regarding the patient list was made should not be considered in the motions to dismiss. Defendants argue that it can be considered because it is central to Medscript's claims, citing Venture Associates Corp. v. Zenith Data Systems Corp., 987 F.2d 429, 431 (7th Cir. 1993). The court agrees with the defendants, but does not find the sales contract necessary to rule on the motions to dismiss.

business and My Script was taking over its patients and would fill the patients' prescriptions, and (2) Medscript had changed its name to My Script, and My Script would fill the patients' prescriptions going forward. My Script also made these false statements to prescribers. The result was that many patients and prescribers believed these statements to be true. My Script further falsely advertised itself as a PCCA certified pharmacy. Additionally, My Script used the patient list to contact and fill prescriptions for patients in Illinois, where it is not licensed to fill prescriptions.

My Script also offered ownership interests to physicians in Florida, where Medscript and My Script are both licensed. The Florida physicians accepted ownership interest, creating a kickback scheme in which physicians are rewarded for referring patients to My Script.

Upon receiving the patient list, Valuscript began sending patients unauthorized prescriptions that were supposed to be filled by Medscript, and which patients had not ordered from Valuscript. Valuscript then billed the patients' insurance carriers for the prescriptions.

My Script and Valuscript also sent their representatives prescription pads to give to prescribers that had Medscript's name on them but My Script's and Valuscript's fax numbers. The result was that prescribers believed they were filling prescriptions with Medscript but were unknowingly filling them with My Script and Valuscript.

## LEGAL STANDARD

Defendants have moved to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. The purpose of such a motion is to test the sufficiency of the complaint, not rule on its merits. Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990). When considering the motion, the court accepts as true all well-pleaded factual

allegations and draws all reasonable inference in plaintiff's favor. McMillan v. Collection Professionals, Inc., 455 F.3d 754, 758 (7th Cir. 2006). The complaint must plead sufficient facts to plausibly suggest that plaintiff has a right to relief and raise that possibility above the speculative level. Bell Atlantic Co. v. Twombly, 550 U.S. 544, 555 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## DISCUSSION

**A. Fed. R. Civ. P. 9(b) Heightened Pleading Standard**

Defendants argue that Medscript has failed to plead the claims based on fraud with specificity as Fed. R. Civ. P. 9(b) requires, noting that Counts I, II, III, IV, and VIII are based on allegations of fraud. Defendants correctly identify that these counts require a heightened pleading standard because the counts allege that defendants engaged in fraudulent conduct, including that My Script made false statements to Medscript's patients and prescribers and My Script and Valuscript attempted to pass themselves off as Medscript by using the prescription pads. See Platinumtel Communications, LLC v. Zefcom, LLC, 2008 WL 5423606 (N.D. Ill. December 30, 2008) (claims of fraud alleging violations of the Lanham Act and the IUDTPA are subject to the heightened pleading standard of Rule 9(b)); PharMerica Chicago, Inc. v. Meisels, 772 F.Supp. 2d 938, 955 (N.D. Ill. 2011) (claims sounding in fraud that allege tortious interference with prospective economic advantage are subject to the heightened pleading standard of Rule 9(b)); Borsellino v. Goldman Sachs Group, Inc., 477 F.3d 502, 507 (7th Cir. 2007) (a civil conspiracy count based on fraud required the heightened pleading standard of Rule 9(b)).

Under Fed. R. Civ. 9(b), the amended complaint must allege "the who, what, when, where, and how" of the fraudulent conduct. DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990). This standard does not require extreme specificity. In Hafferman v. Bass, 467 F.3d 596, 601 (7th Cir. 2006), the Seventh Circuit deemed the complaint sufficient when it identified the person who made the misrepresentation and an inexact description of the time, place, and content (the complaint stated only that the time was late August or early September).

Defendants argue that Medscript's amended complaint fails because it does not plead what was actually said, to whom the representations were made, who engaged in the conduct, what conduct occurred, or how the fraud was accomplished. However, the amended complaint pleads that My Script employees made the statements and what was said: (1) Medscript was out of business and My Script was taking over its patients and would fill the patients' prescriptions, and (2) Medscript had changed its name to My Script, and My Script would fill the patients' prescriptions going forward. Medscript also alleges that My Script and Valuscript passed themselves off as Medscript by using the prescription pads. The amended complaint further asserts that the representations were made to Medscript's patients and prescribers beginning January 2014 and that the conduct was accomplished through the defendants' use of the patient list. These assertions are sufficient under Rule 9(b).

Defendants also move to dismiss because Medscript pleads on information and belief its assertions that many patients and prescribers were duped into believing that Medscript is now My Script or that patients now must fills their prescriptions through My Script. To plead fraud on information and belief, plaintiff must satisfy two elements: (1) the facts constituting fraud are not accessible to plaintiff; and (2) plaintiff provides grounds for his suspicions that make the

6

suspicions plausible. Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co., 631 F.3d 436, 443 (7th Cir. 2011). When a plaintiff is unable to attain specific information before filing a complaint, it is permitted to plead on information and belief. Cincinnati Life Ins. Co. v. Beyrer, 722 F.3d 939, 948 (7th Cir. 2013). In the instant case, Medscript states that because the names of Medscript patients whom My Script called are solely within My Script's knowledge at this stage, it is permitted to plead on information and belief. Therefore Counts I, II, III, and IV meet the heightened pleading standard required by Rule 9(b).

Count VIII (civil conspiracy), however, is not pled with sufficient particularity. To sufficiently plead a claim of civil conspiracy, a plaintiff "must eventually establish: (1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff." Borsellino, 477 F.3d at 509. In Borsellino, the Seventh Circuit affirmed the district court's dismissal of the plaintiff's conspiracy claim based on claims of fraud because the complaint told nothing of the nature of the purported agreement to defraud, such as when the agreement was made or who arranged the conspiracy. Id. Similarly, in the instant case, Medscript merely concludes that all defendants engaged in a conspiracy to commit the torts of unfair competition, intentional interference with Medscript's prospective economic advantage, conversion, and violations of Illinois and Florida law, but does not provide any factual detail about the alleged agreement, thus failing to satisfy Rule 9(b).

Accordingly, the defendants' motions to dismiss the claims based on fraud for failing to be pled with specificity are denied for Counts I, II, III, and IV, and granted for Count VIII.

7

**B.     Fed R. Civ. P. 8(a) Notice**

Medscript's amended complaint alleges nine counts against some or all of defendants. Defendants assert that the amended complaint fails to put them on notice of which claims are alleged against them. In the complaint, a plaintiff is required to "give the defendant fair notice of what the…claim is and the grounds upon which it rests." Twombly, 550 U.S. at 544.

Reading the amended complaint, is it clear that Counts I, II, IV (unfair competition), and VI are alleged against My Script and Valuscript. To the extent that these counts are alleged against Non-Pharmacy Defendants, they are dismissed for failure to provide notice.

Counts III, VII, and VIII are alleged against all defendants.

Counts IV (FDUTPA) and IX are alleged only against My Script. To the extent they are alleged against Valuscript and the Non-Pharmacy Defendants, they are dismissed for failure to provide notice.

**C.     Count I (Lanham Act)**

Medscript alleges that My Script and Valuscript engaged in false advertising, prohibited by the Lanham Act, for making false statements about Medscript to Medscript's patients and prescribers, using the prescription pads with Medscript's name but My Script's and Valuscript's fax numbers, and My Script advertising as a PCCA certified pharmacy. Medscript argues that Organ Recovery Systems, Inc. v. Preservations Solutions, Inc., 2012 WL 2577500 (N.D. Ill. July 4, 2012), is analogous to this case. In Organ Recovery, the court concluded that the defendant's actions were within the scope of the Lanham Act when defendant sent generalized solicitation letters to potential customers with whom the defendant did not have an existing relationship.

There are five elements of a false advertising claim under the Lanham Act,[4] and defendants argue that the allegations do not amount to commercial advertising or promotion as required by the first element. Defendants argue that the statements were not made to the general population or a significant portion of the industry, but were person-to-person communications, and therefore do not fall within the scope of the Lanham Act.

For a communication to be within the scope of the Lanham Act, it does not have to be made to the general public; advertising or promotion is usually directed to subsets of the public. See Neuros Co. v. KTurbo, Inc., 698 F.3d 514, 523 (7th Cir. 2012) ("There is no basis for limiting the Lanham Act to advertising or promotion directed to the *general* public, and the case law does not do that…. What advertising is *not* directed to subsets of the public rather than to 314 million individuals and millions of firms?") (emphasis in original). Communications must, however, be made to a significant portion of the relevant industry. In Organ Recovery, the court noted that "the size of the relevant purchasing public matters to determine whether there was advertising." Organ Recovery 2012 WL 2577500 at *4. For instance, in Neuros, the Seventh Circuit noted "one of the subsets [of the public that is within the scope of the Lanham Act] is engineering firms, and others are subsets of engineering firms such as the civil engineering firms that were faxed advertisements in CE Design Ltd. v. King Architectural Metals, Inc., 637 F.3d

---

[4] The elements are: (1) A false statement of fact by the defendant in a commercial advertisement; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material; and (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement. Hot Wax, Inc. v. Turtle Wax, Inc., 191 F.3d 813, 819 (7th Cir. 1999).

9

721 (7th Cir.2011)." Neuros 698 F.3d at 523. In the instant case, the relevant industry is the compounding pharmacy industry, a subset of the pharmacy industry.

Construing the amended complaint liberally, it is plausible that Medscript's patients and prescribers whom My Script and Valuscript contacted represent a significant portion of the compounding pharmacy industry. Facts outside the four corners of the complaint may show otherwise, but at the pleading stage this court finds that the amended complaint minimally states a claim under the Lanham Act. Accordingly, the defendants' motions to dismiss Count I are denied.

**D.    Count II (IUDTPA)**

Plaintiff and defendants agree that a claim under IUDTPA is analyzed using the same standards as a claim under the Lanham Act (alleged in Count I). See Dynamic Fluid Control (PTY) Ltd. v. Int'l Valve Mfg., LLC, 790 F.Supp. 2d 732, 739 (N.D. Ill. 2011) ("Where factual allegations underlying a Lanham Act claim also form the basis for a claim under the [IUDTPA], the [IUDTPA] claim 'must rise or fall based on the Lanham Act claim.'" (quoting MJ & Partners Rest. Ltd. P'ship v. Zadikoff, 10 F.Supp.2d 922, 929 (N.D. Ill.1998)).

Because the motions to dismiss Count I are denied, the motions to dismiss Count II are also denied.

### E. Count III (Tortious Interference)

Medscript alleges that the defendants engaged in tortious interference with prospective economic advantage[5] because the defendants knew of Medscript's economic expectancy and maliciously intended to and did disrupt Medscript's relationship with its patients and prescribers through My Script's communications to Medscript's patients and prescribers, Valuscript filling unwanted prescriptions that otherwise would have been filled by Medscript, My Script and Valuscript passing themselves off as Medscript, false advertising, using the patient list for marketing purposes, My Script entering into kickback schemes with Florida physicians, and My Script filling prescriptions in Illinois. Medscript alleges that these actions have interfered with its legitimate business expectations of continuing its relationship with its prescribers and patients and caused it injury. Defendants argue in response that: (1) Medscript does not allege that the Non-Pharmacy Defendants engaged in any conduct; (2) My Script's alleged conduct does not support a claim for tortious interference and it did not prevent Medscript's economic advantage from ripening; and (3) the allegation that Valuscript sent unwanted prescriptions that Medscript otherwise would have filled does not suggest improper conduct because prescribers can select which compounding pharmacy fills their prescriptions; (4) and the allegation that My Script and Valuscript used prescription pads with Medscript's name is not alleged in Count III and is insufficiently pled under Fed. R. Civ. P. 9(b).

---

[5] The elements of a claim for tortious interference with prospective economic advantage are: (1) a reasonable expectancy of entering into a valid business relationship; (2) the defendant's knowledge of the expectancy; (3) an intentional and unjustified interference by the defendant that induced or caused breach or termination of the expectancy; and (4) damage to the plaintiff resulting from the defendant's interference. Borsellino 477 F.3d at 508.

11

For a tortious interference claim to survive a motion to dismiss, the complaint must allege specific conduct in which the defendants engaged. See Hackman v. Dickerson Realtors, Inc., 520 F.Supp. 2d 954, 970 (N.D. Ill. 2007). In the instant case, Medscript alleges that Non-Pharmacy Defendants transferred the patient list to My Script and Valuscript, and, in turn, My Script and Valuscript used the patient list in a way that interfered with Medscript's relationships with its prescribers and patients. Previous courts have found that a plaintiff's claim for tortious interference survives when his complaint alleges that defendants made false statements that caused plaintiff to lose potential customers. Manley v. Boat/US Inc., 2014 WL 1647117 at *2-4 (N.D. Ill. April 23, 2014) (concluding that the plaintiff's tortious interference claim survived a motion to dismiss where the complaint alleged that defendants made false statements about plaintiff, including that plaintiff had gone out of business, had gone bankrupt, and that its license had been revoked, plaintiff identified potential customers that it lost because of the statements). The Manley court also inferred that the defendants gained the business that the plaintiffs lost. Applying the reasoning of Manley to the facts of this case, Medscript's amended complaint sufficiently pleads that My Script engaged in tortious interference with prospective economic advantage based on false statements made to Medscript's patients and prescribers.

Regarding the allegation that Valuscript filled unwanted prescriptions, the burden is on the plaintiff to present facts that the defendant's conduct was improper. Miller v. Lockport Realty Group, Inc., 878 N.E.2d 171, 177 (Ill. App. 2007) ("'When, as in this case, the existence of a privilege [of competition] in favor of the defendant is apparent on the face of a claim for tortious interference… it is the plaintiff's burden to plead and prove that the defendant's conduct was unjustified or malicious.'" (quoting Storm & Associates, Ltd. v. Cuculich, 700 N.E.2d 202,

210 (Ill. App. 1998))). In this case, Medscript's amended complaint sufficiently pleads that Valuscript's conduct was improper, stating that Valuscript sent several patients prescriptions that they had not requested, which were supposed to be filled by Medscript, and billed the patients' insurance carriers for them.

Finally, the court has already determined that the claims are sufficiently pled under Fed. R. Civ. P. 9(b). The court understands "passing themselves off as Medscript" to refer to My Script and Valuscript using prescription pads with Medscript's name on them. The facts pled to support this claim are sufficient. Medscript alleges that My Script and Valuscript knew of the relationship Medscript had with its prescribers and interfered with that relationship by giving those prescribers prescription pads with Medscript's name but My Script's and Valuscript's fax numbers on them, so that prescribers would unknowingly send prescriptions to My Script and Valuscript.

Therefore, all defendants' motions to dismiss Count III are denied.

**F.     Count IV (FDUTPA)**

Medscript alleges that My Script violated FDUTPA by engaging in a kickback scheme in which it offered physicians ownership interests in My Script to induce the physicians to refer patients to My Script. Under the Florida Patient Self-Referral Act (F.S.A. 456.053), physicians cannot refer patients to health care service providers in which they are investors unless they qualify for certain exceptions, for which Medscript states My Script does not qualify. My Script alleges that it does qualify for the exceptions and is not violating Florida law, but because at this stage the court takes Medscript's allegations as true, these arguments will not be considered.

My Script next argues that Medscript does not have standing to bring a claim under FDUTPA because the statute allows only consumers to bring complaints. The federal district courts in Florida are divided on whether competitors can bring complaints under FDUTPA, or if only consumers have standing. Before 2001, the statute clearly allowed only consumers to bring complaints. However, "the 2001 legislative amendments to § 501.211(2) broadened the scope of FDUTPA, to authorize any person or entity who suffered a loss as a result of an unfair or deceptive trade practice or act to bring a suit for damages. Prior to 2001, subsection (2) provided that in an individual action brought 'by a *consumer*' who suffered a loss as a result of a violation of the act, 'such *consumer*' could recover actual damages. In 2001, the Florida Legislature replaced the word 'consumer' with the word 'person.'" Kelly v. Palmer, Reifler, & Associates, LLC, 681 F. Supp. 2d 1356, 1373 (S.D. Fla. 2010). The Kelly court therefore found that non-consumers, including competitors, could bring claims under the FDUTPA. The court agrees with the reasoning of Kelly, and holds that competitors, such as Medscript, have standing to bring claims under FDUTPA.

Lastly, My Script argues that Medscript lacks the requisite nexus to Florida to bring a claim under FDUTPA, relying on Huston v. Rexall Sundown, Inc., 837 So.2d 1090, 1094 (Fla. Dist. Ct. App. 2003), in which the court concluded that non-residents lacked a sufficient relationship to Florida to be protected by FDUTPA. My Script asserts that Huston is analogous to the instant case because Medscript is an Illinois corporation. Medscript, however, is licensed in Florida, does business there, and competes against My Script for clients in Florida. Because the alleged conduct took place in Florida and Medscript was injured in Florida, it has a sufficient nexus to the state to bring a claim under FDUTPA.

Accordingly, My Script's motion to dismiss Count IV (FDUTPA) is denied.

## G.     Count V (Unfair Competition)

Medscript alleges that My Script and Valuscript are liable for common law unfair competition for passing themselves off as Medscript, using protected health information for marketing purposes, violating FDUTPA, and filling prescriptions in Illinois without a license. Defendants respond that Count V is duplicative of Counts II (IUDTPA) and III (tortious interference) and should therefore be dismissed, relying on Hoagland ex. rel. Midwest Transit, Inc. v. Sandberg, Phoenix & Von Gontard, P.C., 385 F.3d 737, 744 (7th Cir. 2004). But the Hoagland court concluded only that "when a breach of fiduciary duty claim is based on the same operative facts as a legal malpractice claim, and results in the same injury, the latter should be dismissed as duplicative."

In the instant case, the court has concluded that counts I and II state claims for violations of the Lanham Act and the IUDTPA. Unfair competition claims and deceptive trade practice claims brought under Illinois statutes are to be resolved according to the principles set forth under the Lanham Act. La ZaZa Trattoria, Inc. v. Lo Bue, 2102 WL 3308846, *3 (N.D. Ill. August 10, 2012). Plaintiff's claim in Count V is sufficiently pled and not duplicative of Count II. See id. The operative facts underlying each count are not identical, however, in addition to the allegations pled in Count III, Medscript's unfair competition claim asserts that My Script falsely advertised itself as a PCCA certified pharmacy. Therefore, Medscript's unfair competition claim is not duplicative of Counts II and III, and the defendants' motions to dismiss Count V are denied.

### H. Count VI (Unjust Enrichment)

Medscript alleges that My Script and Valuscript have been unjustly enriched through their intentional and malicious use of the patient list. Defendants argue that the complaint fails to allege that My Script and Valuscript unjustly retained a benefit to Medscript's detriment. They assert that My Script and Valuscript did not act improperly in using the patient list because the list was given to the Non-Pharmacy Defendants without restriction. Defendants further argue that Medscript's theory of unjust enrichment is misplaced because the claim arises from defendants' alleged improper use of the patient list, not alleged improper retention of Medscript's property.

To state a claim for unjust enrichment under Illinois law, the plaintiff must present facts that establish that (1) the defendant has unjustly retained a benefit to the defendant's detriment, and (2) the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience. Williams v. National Housing Exchange Inc., 949 F.Supp. 650, 653 (N.D. Ill. 1996). Medscript alleges that the defendants were unjustly enriched through their use of the patient list, which includes My Script making false statements to patients and prescribers, Valuscript filling prescriptions that otherwise would have been filled by Medscript, and My Script and Valuscript using prescription pads that caused prescribers to believe they were sending prescriptions to Medscript, while they were sending prescriptions to My Script and Valuscript. These facts sufficiently state a claim for unjust enrichment because they allege that the defendants' improperly benefitted by contacting Medscript's patients and prescribers. Thus, the defendants' motions to dismiss Count VI are denied.

### I. Count VII (Conversion)

Medscript alleges that all defendants exerted unauthorized control over Medscript's property, the patient list. Defendants argue that this claim fails because Medscript fails to allege that it has an exclusive right to the patient list, that Medscript is entitled to immediate possession of the list, or that Medscript demanded possession of the list.

The elements of a conversion claim are: "(1) defendants' unauthorized and wrongful assumption of control, dominion, or ownership of the plaintiff's personal property; (2) plaintiff's right in the property; (3) plaintiff's right to the immediate possession of the property, absolutely and unconditionally; and (4) a demand for possession of the property." G.M. Sign, Inc. v. Elm Street Chiropractic, Ltd., 871 F.Supp. 2d 763, 767 (N.D. Ill. 2012). Defendants correctly assert that Medscript has not pled that it is entitled to immediate possession of the property list or that it demanded the property list from the defendants. Additionally, Medscript concedes that it gave the patient list to Non-Pharmacy Defendants, so its conversion claim fails as a matter of law; Medscript does not have an absolute right to possession of the patient list.

Therefore, defendants' motions to dismiss Count VII are granted.

**J.      Count IX (Injunction Under Pharmacy Practice Act)**

Medscript alleges that My Script violated the Illinois Pharmacy Practice Act (225 ILCS 85 et seq.) by filling prescriptions in Illinois without a license to do so. My Script responds that Medscript does not have standing to bring the claim.

The Pharmacy Practice Act states that: "If any person shall practice as a pharmacist… without being licensed under the provisions of this Act, then any licensed pharmacist, any interested party, or any person injured thereby may… petition for [injunctive] relief." 225 ILCS 85/35.1(b). Medscript has alleged that it is a licensed pharmacy in Illinois and that My Script is

17

not. Therefore, it has standing and has sufficiently pled Count IX. My Script's motion to dismiss Count IX is denied.

## **CONCLUSION**

For the reasons set forth above, the defendants' motions to dismiss are granted in part and denied in part. Counts VII and VIII are dismissed against all defendants. The court denies all defendants' motions to dismiss Counts I, II, III, V, and VI. Finally, Counts IV (FDUTPA) and IX survive against My Script only.

Defendants are directed to answer the remaining counts against them, respectively on or before January 16, 2015. The status report previously set for January 15, 2015, at 9:00 a.m. is continued until further notice.


**ENTER:**  **January 12, 2015**

_____
**Robert W. Gettleman**
**United States District Judge**